UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NEW ENGLAND ANTI-VIVISECTION SOCIETY,<br>333 Washington St., Suite 850<br>Boston, Massachusetts 02108, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ No. |
| U.S. FISH AND WILDLIFE SERVICE,<br>1849 C Street, N.W.<br>Washington, D.C.   20240, | ) ) ) ) | |
| DAN ASHE, Director<br>U.S. Fish and Wildlife Service,<br>1849 C Street, N.W.<br>Washington, D.C.   20240, | ) ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552

*et seq.*, to obtain access to information in the possession of the federal Fish and Wildlife Service

("FWS") pertaining to an unprecedented and highly controversial effort by the FWS to assist

Yerkes National Primate Center ("Yerkes") – an animal research laboratory in Atlanta, Georgia –

in obtaining a permit under Section 10 of the Endangered Species Act ("ESA" or Act), 16 U.S.C.

§ 1531, *et seq.*, to export eight chimpanzees to the Wingham Wildlife Park ("Wingham"), an

unaccredited zoo in Kent, England.   If the permit is granted – ***a decision that can be made as***

***soon as February 22, 2016*** – this permit will be the first of its kind to be issued regarding the

export of *captive* chimpanzees since the captive members of the chimpanzee species were

officially listed as "endangered" under the Endangered Species Act ("ESA" or Act), 16 U.S.C. §

-2-

1531, *et seq.* ESA, effective September 14, 2015.

Although Plaintiff New England Anti-Vivisection Society ("NEAVS") has attempted to obtain access to all records concerning this controversial matter in connection with preparing comments on the permit application – which are currently due no later than February 22, 2016 – the FWS has failed in a timely matter to release all of the information to which NEAVS is entitled and that it needs for its comments.   Accordingly, as permitted by FOIA, NEAVS is filing this action this case in an effort to obtain that information as soon as possible.

## JURISDICTION

2.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

3.      NEAVS is one of the most venerable animal protection organizations in the country.   Founded in 1895, it is a national animal advocacy organization dedicated to ending the use of live animals in research, testing, and science education.   Through research, outreach, education, legislation, and policy change, NEAVS advocates for replacing animals in biomedical research with modern non-animal alternatives that are ethically, humanely, and scientifically superior.   NEAVS has spent many years and considerable resources advocating for protections for captive chimpanzees, particularly chimpanzees used in laboratory research, and it was one of the petitioners that filed the successful petition in 2010 with the FWS to have the captive members of the chimpanzee species be included in the "endangered" listing for the species so that the captive members would be afforded all of the protections extended to an endangered species under the ESA.   NEAVS has also spent many years and resources advocating for the retirement of chimpanzees used in research laboratories, including chimpanzees used by Yerkes,

-3-

and advocating that such chimpanzees be retired to chimpanzee sanctuaries in the United States where they can live out the remainder of their lives in settings that mimic their natural habitats to the greatest extent possible, with other chimpanzees, and without being commercially exploited or bred for such purposes.   NEAVS is the requester of the records at issue in this case.

4.      Defendant FWS is a federal agency that has possession of the information requested by NEAVS.

5.      Defendant Ashe is the Director of the FWS with ultimate responsibility for ensuring FWS's compliance with FOIA.

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

6.      The ESA was enacted because of Congress' concern that species of fish, wildlife, and plants "have been so depleted in numbers that they are in danger of or threatened with extinction."   16 U.S.C. § 1531(a).   The statute provides that "all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes of [the Act]."   16 U.S.C. § 1531(c).

7.      An "endangered species" is "any species which is in danger of extinction."   16 U.S.C. § 1532(6).

8.      Section 9 of the ESA, 16 U.S.C. § 1538(a)(1)(A), provides that it is unlawful to "export" any endangered species from the United States without permission from the FWS pursuant to the requirements of Section 10 of the ESA, 16 U.S.C. § 1539.

9.      Section 9 also prohibits the "taking" of any endangered species without a permit, 16 U.S.C. § 1538(a), and the term "take" is defined by the Act to include "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."

-4-

16 U.S.C. § 1532(19).   Section 9 further provides that it is unlawful to "possess, sell, deliver, carry, transport, or ship" any endangered species that is unlawfully taken.   16 U.S.C. § 1538(a).

10.     This prohibition applies to endangered animals bred in captivity, as well as to those in the wild, unless a lawful Section 10 permit has been issued by the FWS.

11.     Section 10(a)(1)(A) of the ESA authorizes the FWS to issue a "permit" for any act that is otherwise prohibited by Section 9, but only if such act is "for scientific purposes or to enhance the propagation or survival of the affected species."   16 U.S.C. § 1539(a)(1)(A).

12.     Section 10(c) further provides that the FWS "shall publish notice in the Federal Register of each application for an exemption or permit which is made under [section 10]," 16 U.S.C. § 1539(c), and requires that "[e]ach notice shall invite the submission from interested persons, within thirty days after the date of the notice, of written data, views or arguments with respect to the application . . . ."   *Id.*   Section 10(c) also mandates that "[i]nformation received by the [FWS] as a part of any application shall be available to the public as a matter of public record at every stage of the proceeding."   *Id.*

13.     On June 16, 2015, the FWS issued a final rule making clear that the captive members of the chimpanzee species are considered "endangered" along with the wild members of the species.   80 Fed. Reg. 34500 (June 16, 2015).   The final rule providing captive chimpanzees the full protection of an "endangered" species under the ESA became effective on September 14, 2015.

14.     Yerkes is a research laboratory affiliated with Emory University in Atlanta, Georgia.   It has bred chimpanzees for medical research for decades.

-5-

15.     On September 28, 2015, Yerkes applied for a Section 10 "enhancement" permit under the ESA in order to export eight chimpanzees to Wingham.

16.     When it applied for its enhancement permit to export the eight chimpanzees, Yerkes represented to the FWS that the export of the chimpanzees would "enhance the propagation and survival" of the species because: (1) Wingham would breed the chimpanzees in strict accordance with the European Species Survival Program for chimpanzees ("EEP"), which oversees the breeding of endangered species by European zoos to insure against inbreeding and the loss of genetic viability; (2) Wingham would display the chimpanzees in a way that would educate the public about the imperiled state of the chimpanzee, which in turn would foster conservation efforts; and (3) in exchange for being allowed to export the chimpanzees, Yerkes and Wingham would each donate approximately $2,000 a year for five years to the Kibale Chimpanzee Project's Snare Removal Program in Africa and the Wildlife Conservation Society – both of which are organizations engaged in chimpanzee conservation efforts.

17.     As required by Section 10(c) of the ESA, on October 15, 2015 the FWS published notice of Yerkes' application for a Section 10 enhancement permit, and provided the public until November 16, 2015 to submit written data, views, and arguments with respect to the application, as provided by the Act.   80 Fed. Reg. 62089, 62091 (Oct. 15, 2015).

18.     Those who commented overwhelmingly opposed issuance of the requested permit.

19.     On October 28, 2015 – before the close of the public comment period – the Kibale Chimpanzee Research Project made public a letter it had written to Wingham – a copy of which was sent directly to the FWS – explaining that it had *not* agreed to accept any money from

-6-

Wingham in connection with the Yerkes' permit application, and that, in fact, it had not even been told by either Yerkes or Wingham that it was being used as "leverage" to obtain the requested permit.

20.     On November 9, 2015, the Association of Zoos and Aquariums submitted comments opposing the export permit and informed the FWS that both the Kibale Chimpanzee Project *and* the Wildlife Conservation Society had refused the donations from Yerkes and Wingham "on the grounds that they do not agree with the transfer."

21.     On November 13, 2015, a coalition of animal welfare organizations, sanctuaries, and scientists, including Plaintiff NEAVS (hereinafter "NEAVS et al."), submitted extensive comments and exhibits opposing the Yerkes' permit application, including because Yerkes had "failed to disclose material information" and "made false statements" as to many other material facts, within the meaning of the FWS's regulations governing such permits, 50 C.F.R. § 13.21(b)(2).   For example, NEAVS et al. explained that Yerkes had falsely represented that the export would "enhance the propagation or survival" of the chimpanzee species because Wingham would be breeding the chimpanzees in cooperation with the European Species Survival Program ("EEP"), despite the fact that the EEP had issued a written statement, supplied to FWS, stating that Wingham is not a member of the EEP and the EEP "does not support the proposed transfer."   NEAVS et al. further explained that the FWS could not issue an enhancement permit under Section 10 in exchange for a promise to contribute money to another organization because the plain language of the statute requires the agency to find that the actual export itself will "enhance the propagation or survival" of the species, and that, in any event, both the Kibale Chimpanzee Research Project and the Wildlife Conservation Society had

-7-

declined to accept any such funding to assist Yerkes in obtaining a permit.   NEAVS et al. also

explained that there were several U.S. chimpanzee sanctuaries that were willing to provide

homes for the eight chimpanzees.

22.     The comment period closed at midnight on November 16, 2015.

23.     On November 27, 2015, the FWS notified NEAVS et al. that the FWS had made a

final decision to issue a permit based on a "shift in the organization and amount being donated

by Yerkes," and that "[t]he final donation will be $45,000 per year for five years to the

Population & Sustainability Network" ("PSN") – a network within an organization called the

Margaret Pyke Trust that deals primarily with educating women in underdeveloped countries

about reproductive health and rights, and which has never done *any* work on chimpanzee

conservation.

24.     The chimpanzees were scheduled for export to England on December 7, 2015.

25.     On November 30, 2015, NEAVS et al. filed a lawsuit challenging the FWS's

decision to issue the permit to Yerkes, relying in part on the FWS's violation of its statutory duty

under Section 10(c) of the ESA to provide the public with access to all information submitted in

support of such a permit application, as well as Yerkes' demonstrated misrepresentations and

failures to disclose information as discussed above.

26.     On December 2, 2015, the FWS notified NEAVS et al. that it had decided to re-

open the comment period regarding the Yerkes' permit application and that it would not make a

final decision regarding that application until the close of the new comment period.   For that

reason, NEAVS et al. dismissed their lawsuit.

-8-

27.     Meanwhile, in response to a FOIA request, NEAVS learned that the FWS's

permitting officer, Tim Van Norman, had been actively involved in arranging for Yerkes to give

money to PSN as a means of obtaining the requested permit, apparently in response to the fact

that, contrary to representations made in Yerkes' original application, both the Kibale

Chimpanzee Research Project and the Wildlife Conservation Society had refused to accept such

funding and instead opposed issuance of the permit.

28.     Accordingly, by letter dated November 30, 2015, NEAVS submitted a FOIA

request to FWS for "any and all information and correspondence to or from Tim Van Norman

and FWS and or any other entity or individual in regards to PRT-69024B [the Yerkes' permit

application] that is not already publicly available on the [FWS's] website," that was generated or

received by the FWS since August 31, 2015.   NEAVS explained in its request that it was

particularly concerned that it had not received certain information in response to an earlier FOIA

request, including any "back and forth between Yerkes and the Fish and Wildlife Service" about

that fact that Yerkes had erroneously stated in its original application materials that in order to

demonstrate that the requested permit would "enhance the survival" of the chimpanzee species,

Yerkes would be giving money to the Kibale Chimpanzee Research Project and the Wildlife

Conservation Society, when it was now clear that neither organization had agreed to accept such

funding and that they were both in fact *opposed* to the requested permit.   In its request, NEAVS

requested both expedited processing and a waiver of fees.

29.     By letter sent the next day, December 1, 2015, NEAVS further requested access

to "all information pertaining to any and all correspondence to or from" various organizations

and individuals including the PSN, Yerkes, Wingham, the FWS, and Tim Van Norman,

including all records "concerning [] written or verbal conversations among and between" such individuals and organizations.   As NEAVS explained, it was requesting the information "in furtherance of its ability to monitor and comment on these materials" as provided by Section 10(c) of the ESA, once the FWS re-opened the comment period on Yerkes' permit application. Again NEAVS sought expedited processing and a waiver of fees associated with processing its request.

30.     By letter dated December 15, 2015, the FWS explained that it was responding to both NEAVS's November 30 and December 1 FOIA requests, that it was waiving the fees, and that it was expediting the processing of NEAVS's request, but taking an additional 10 working days to do so.

31.     On January 21, 2016, the FWS published in the Federal Register notice that it was re-opening the comment period on the Yerkes' permit application, and that all public comment must be submitted to FWS by February 22, 2016.

32.     Although 20 working days and an additional 10 working days have passed since NEAVS submitted both its November 30, 2015 and December 1, 2015 FOIA requests, NEAVS has not received a complete substantive response to either request.

33.     Because NEAVS's comments on the Yerkes' permit application are currently due on February 22, 2016, it has no choice but to file this action in an effort to compel disclosure of the requested information so that it can obtain such information in time to review and incorporate such information in its public comments on Yerkes' "new" permit application.

-10-

## PLAINTIFF'S CLAIM FOR RELIEF

34.     There is no statutory basis for FWS's failure to provide NEAVS with the

information requested in NEAVS's November 30, 2015 and December 1, 2015 FOIA requests,

and the agency is in violation of the statutory deadlines for providing such information.

**WHEREFORE**, Plaintiff prays that this Court:

(1)     Declare that Defendants have violated FOIA by failing to disclose the records

requested by Plaintiff;

(2)     Order Defendants to make all of the requested records immediately available to

Plaintiff;

(3)     Award Plaintiff its costs and reasonable attorneys' fees in this action; and

(4)     Grant such other and further relief as the Court may deem just and proper.


Respectfully submitted,

_/s/_____
Katherine A. Meyer
(D.C. Bar No. 244301)
Kmeyer@meyerglitz.com


__/s/_____
Eric R. Glitzenstein
(D.C. Bar No. 358287)
Eglitzenstein@meyerglitz.com


Meyer Glitzenstein & Eubanks, LLP
4115 Wisconsin Ave., N.W.
Suite 210
Washington, D.C. 20016
(202) 588-5206
(202) 588-5049 (fax)

Attorneys for Plaintiff

Date: January 29, 2015